Good morning. My name is Judy Lorenzo, and I represent the petitioner in this matter, who is Adrian Vargas Cervantes. Regarding this case, the approach that we took on the brief in support of our appeal was several-fold. We stated that the immigration judge erred in finding that the Respondent's convictions, there were two convictions under Section 273.5 and 442 of the California Penal Code, were crimes involving moral turpitude. It is our position that that is an error. And we also put forth that the immigration judge incorrectly denied the Respondent an opportunity to concurrently apply for relief under INA Section 240A and 212B, based on the requirements of INA Section 240A. The basis of the crimes involving moral turpitude are somewhat individualistically applied. When we say that a State criminal conviction is sufficient to be considered a crime of moral turpitude under the INA Code, the Court goes through a divisibility analysis, and we looked at the methodology used in Taylor v. the United States.   used in the United States. Counsel, is this comment directed to 273.5? I'm sorry, sir. Is your analysis here going to be directed to the 273.5? Yes. And the government has conceded that that's not a crime involving moral turpitude, at least that it's a crime, but that they are missing one of the elements here. Isn't that correct? It's an element that your client ultimately concedes, but that can't be established through the public documents. Is that correct? That is correct. Okay. So if 273 is out of the picture, what are the consequences of him having one conviction for a crime involving moral turpitude, which would be the 422? Well, again, you have to approach the Taylor categorical approach. And it's removable if the Court only looks to the fact of the convictions and the statutory definition of the criminal offenses. This approach does not address the removability, but whether an alien is to be an aggravated felon or a designation with consequences, you know, serious consequences. You don't deny that 422 is a crime involving moral turpitude? No. Okay. So what are the consequences of the government conceding that it cannot rely on the 273.5 conviction? Well, I think we have to look beyond the record of conviction itself to the particulars of that underlying conviction. We have to look at the particulars of the underlying conviction of 422? I think that that's important. Haven't we held that it's categorically a crime involving moral turpitude? Well, it's important to look at both of them in that way. If we categorically said that it's a crime involving moral turpitude, why would we bother to look at the underlying elements? Well, I think that that's not what the categorical approach is trying to do. Yes, it is categorical. But it's still limited to an examination of documents of the record to conclude if this, if he was convicted to all the elements. Are you challenging the fact of his conviction under 422? Pardon me, sir? Do you challenge the fact of his conviction under 422? No, no. Okay. That's not quite what I'm saying. All right. So what's the problem? Are we getting to the petty crime exception? Is that where we're headed? Yes, yes. Okay. Well, explain to me how we get there and what your client has to demonstrate and what the government would have to respond to. Well, at this point, I only have five minutes left, so I would like to reserve that for my rebuttal if that's not appropriate. You may do that. I think it would be helpful to the Court if you would be able to answer Judge Bybee's question first, if you can. I'm not able to discuss that at this time. Okay. Then you may reserve the rest of your time. And we'll hear from Ms. Carmichael. Good morning. Amy Carmichael for the government. May it please the Court. Okay. So the petition in this case has two convictions. The first is a conviction under California Penal Code, Section 422, for threats to commit a crime resulting in great bodily injury. The Court and Ladder-Singh determined that that conviction is categorically across the board.  422, for a crime involving moral turpitude. For that reason, the question is whether he is inadmissible due to the petty offense exception. So the way that 1182 works. So the way that this ought to be framed is that he is inadmissible if he has a crime involving moral turpitude, but if he only has one conviction of a crime involving moral turpitude, there's a potential exception for him if the crime was a petty offense. Yes. And the petty offense exception requires that the alien has committed only one offense, and that if convicted of that offense, he served no more than six months, and that here he served only 60 days, and that he could be convicted to no more than one year. Now, the conviction documents demonstrate that he was charged with a misdemeanor, and this conviction under 273.5 is a Wobbler offense, which means that charged as a misdemeanor, the one-year exception applies. So the question is really whether this – sorry, for both convictions, actually, it was a misdemeanor, and they're both Wobbler statutes. So the question is really whether the 273.5 conviction counts in proving that he committed two offenses. And that's because the statute uses two different words when it refers to offenses. One is whether you've been convicted, and the other is whether you've committed something. Right. Now, the Board relied on the Silva-Trevino case in concluding that he had been convicted of a crime involving moral turpitude under 273.5. And while – and this Court in Olivas-Mata determined that for the purposes of 1227, which requires an actual conviction, that Silva-Trevino is not good law. However, Olivas-Mata left open an exception because it explicitly noted a distinction between the requirement of a conviction and the admits committing language that's contained in 1182. We – the government believes that Silva-Trevino may still apply in the 1182 context, but we don't ask the Court to resolve that, nor is it necessary to resolve it in this case, because the only real question is whether he committed a second offense. And we believe that his conviction, combined with his clear admissions, that the offense was committed against his wife. So you're suggesting that under the committed, that the language of the statute suggests that that can be established by things other than the fact of conviction, the documents we would ordinarily look at under the categorical and modified categorical approaches. Yes. So you're going to patch together two things, which is one is the fact of conviction, and the second is that he admits that the victim was his spouse. Yes. Now, I'd like to remind the Court that the jurisdictional bar applies in this case under 1252a2c, which means that the Court's review is restricted to questions of law and constitutional claims. These are questions of law that we've been discussing, though, quite clearly. Yes. The question of whether the Board is permitted to look at certain types of evidence is absolutely a legal question. And whether things are categorically or not categorically, and that's how to interpret the statute and so forth. Yes. But if the question is the weight of the evidence and the evidence that the Board If we determine that the Board can look at the evidence, if we determine that the Board can look at it. We don't get to reweigh the question of his admission. Exactly. But we do get to consider whether an admission is evidence sufficient to prove it. Yes. That's it precisely. Now, what were the circumstances of the admission? So there's a number of things. He admitted in the context of documents that he submitted to the Board or to the immigration judge. His wife submitted a letter admitting that she was the victim at question, and he concedes it in all of his briefing and arguments that his wife was the victim. It was not a judicial admission for the purposes of using the Taylor approach, however. So there's plenty of evidence of record. It's just not the evidence that we would ordinarily look at in determining whether he was convicted. There's no conviction. But the statute clearly doesn't require a conviction. Right. It could be a housemate under the statute. Right. It's divisible in that way. Okay. So for that reason, the government contends that the petty offense exception does not apply because he has committed more than one crime-involving moral turpitude. So then the next question would be whether the 212H waiver applies. And for that, the government contends that the 212H waiver does not apply because he has fewer than seven years of residence. The Petitioner's Counsel conceded before the immigration judge that the 212H waiver doesn't apply, which, as a result, there's no evidence of record substantiating his allegations or demonstrating that he meets the other requirements of 212H. He's been present in the country for more than seven years. That's true. However, he was only he had not been admitted as an LPR for that whole time. And prior to his admission as an LPR, there's no evidence that he was maintaining lawful presence. The Petitioner's required what the statute says is. So is the 212H waiver limited to lawful presence? Yes. What it says is if you were previously an LPR and now you're seeking a 212H waiver, that you have to have he has lawfully resided continuously in the United States for a period of not less than seven years. The board examined this in a published decision matter of Rotimi, which held that awaiting adjudication for an adjustment application did not confer lawful residence. The board compared the requirements of 212H to that of the cancellation statute, which requires that the alien has resided continuously for seven years after having been admitted in any status. The language of the cancellation section suggests that you may be admitted and fall out of status, but maintain residence. And the board noticed that 212H did not explicitly require status, but found that the residence had to be in accordance with the immigration laws. So are there any cases in any circuits that have addressed the question of matter of Rotimi? Yes. The Second and Eleventh Circuits have both looked at this question, and that's the Kinshia case. And then the Second Circuit looked at Rotimi on direct review. And what did they decide about Rotimi? They found that the phrase was ambiguous and that the board's interpretation was reasonable and thus entitled to deference. The government believes that this Court should come to the same conclusion. Does the Court have any additional questions? I don't believe so. Thank you. All right. Then we believe that his crimes render him inadmissible and that he lacks lawful residence for a waiver of inadmissibility. And as such, the Court should deny the petition for review. Thank you. Thank you. Ms. Lorenzo, you have reserved quite a bit of time, and it's all yours. If you'd pull the microphone back down, we'll be able to hear you rather short. Sorry. Thank you, Your Honor. One of the issues seems to be the matter of the 273.5 conviction and another matter seems to be the regarding of his admissions. And regarding admissions, I think we have to understand, first of all, this is a person who is from Mexico and speaks only Spanish. So when he was, let's say, arrested and taken in and addressed through the judicial system, that he was, in his conversation with police, reliant on the interpretation of a relative. This relative was not his relative, but his wife's relative. And that person, because of the nature of the relationship, was not correctly translating and not giving him legal ---- correct legalism. And I'm not going to give you advice or whatever you want to talk about that, because this person was telling him, just say you did it, and they'll leave you alone, because you both did it, and, you know, they'll just tell you to go away, you know, to cool off and go away, and they won't do anything. You know, that's the way that the police are. So his admission and even his wife's letter was more towards a minor, what we would call incident, more verbal than physical. And it later came to be that, you know, he did not understand his immigration, how his immigration rights would be used. He was just trying to get through the situation and did not understand that what this could do for his immigration status. He was not correctly represented, I don't believe, but even in the matter of the arrest was misinformed. And certainly not ever informed as to the nature of what this would be to his immigration status. He had no idea that something so minor could affect something so major. So that's one ---- one matter that I think that the Court ought to entertain. And I think that when the wife expresses in her letter how things happened, I think that we have to accept that as well as anything that he would say. And that, you know, when people get to arguing, it doesn't mean that there's any willful intent, any violence, any serious injury, but, you know, it could still be an actionable 273.5. And the last thing I would say is that a lot of the time and the denial of the 212.8 is due to the delays in the processing of the application. And we would ask that you look at that factor also, the actual factor between appointment times and actual paperwork. Thank you, counsel. Thank you. We appreciate very much the arguments of both counsel. The case just argued is submitted.
judges: SCHROEDER, GRABER, BYBEE